IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JORDAN RAY JOHNSON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:26-MJ-1747 |

**MEMORANDUM AND ORDER**

This case came before the Court on October 14, 2026, for a preliminary hearing on a Criminal Complaint ("Complaint") [Doc. 3] and a detention hearing to determine Defendant's release or detention.[1] *See* 18 U.S.C. § 636(b). Assistant United States Attorney Michael Gilmore appeared on behalf of the Government. Attorney Rachel Wolf represented Defendant Jordan Ray Johnson, who was also present.

Defendant has been charged in a Criminal Complaint, supported by an Affidavit, with two offenses: conspiracy to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), and possession of a destructive device in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(B)(ii) [Doc. 3]. The Government asks the Court to detain Defendant, arguing he is a danger to the community and a flight risk. Defendant seeks release on bond with conditions that he be allowed to reside with his

---

[1] At Defendant's initial appearance on October 9, 2026, the Government moved to have Defendant detained [Doc. 4, Minutes]. The Court scheduled the detention and preliminary hearing for October 14, 2026 [*id.*], and on that date, Defendant filed a Motion for Pretrial Release on Conditions [Doc. 9].

mother and stepfather, whom he offers as third-party custodians,[2] in Friendsville, Tennessee; he be placed on house arrest with electronic monitoring and not leave the residence except for work, treatment, legal, or medical appointments; he maintain his previous employment; he attend substance abuse treatment; he be prohibited from possessing or acquiring any firearm, explosive device, or any precursor materials to an explosive device; and he have no contact with any codefendant, witness, or the confidential informant ("CI") in this case [Doc. 9 pp. 6–7]. For the reasons set forth below, the Court finds probable cause that Defendant Johnson committed the charges as alleged in the Complaint and further finds that the Government has proven by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

## I. PRELIMINARY HEARING

### A. BACKGROUND

The Criminal Complaint charges Defendant with conspiracy to distribute methamphetamine and possession of a destructive device in furtherance of a drug offense [Doc. 3 p. 1]. The supporting Affidavit of Special Agent Thomas Waggoner of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") states that law enforcement first met with the CI regarding purchase of methamphetamine from the Defendant on July 6, 2026 [*Id.* ¶ 8]. On that date, the CI set up a meeting with Defendant to purchase methamphetamine and was given marked currency and a device to record the encounter [*Id.*]. The CI met with Defendant at the prearranged location, purchased 2.4 grams of methamphetamine, and returned the drugs,

[2] While Defendant proposes both his mother and stepfather as third-party custodians in his Motion for Release [Doc. 9 pp. 6–7], at the hearing, Defendant only referenced his mother as a potential third-party custodian, if such was deemed necessary by the Court.

remaining currency, and recording devices to the officers, who confirmed the chemical identification of the material was positive for methamphetamine using a MX908 Handheld Mass Spectrometer [*Id.* ¶¶ 9–11]. The CI would go on to make additional purchases of methamphetamine from Defendant: 5.2 grams on July 13, 2026 [*id.* ¶¶ 12–13]; 4.2 grams on July 28, 2026 [*id.* ¶¶ 16–18]; 3.5 grams on August 6, 2026 [*id.* ¶¶ 34–35, 38]; and 3.5 grams on August 14, 2026 [*id.* ¶¶ 48–49]; all of which were confirmed by field tests to be methamphetamine [*Id.* ¶¶ 15, 18, 38, & 49].

On July 30, 2026, while the investigation was ongoing, the CI was instructed by Officers to ask Defendant whether he could purchase a gun [Preliminary Hearing, 3:59]. Defendant told the CI that he did not have a gun that he could sell him [Preliminary Hearing, 4:05] but then began discussing the purchase of an improvised explosive device ("IED") with the CI [Doc. 3, ¶ 19; Exh. 10]. Defendant stated to the CI that he had "something for you. It[']s not what you asked for, but it definitely will make something go boom" [*Id.*]. Although Defendant initially said the IED would cost $50, on the day of the transaction, Defendant called the CI and told him the price had been raised to $100 so that Defendant "could purchase more methamphetamine for sale" [*Id.* ¶¶ 20 & 23]. The CI then met with Defendant and purchased the IED ("Device 1") in exchange for $100 on August 3, 2026 [*Id.* ¶¶ 21 & 24]. After the purchase, Device 1 was retrieved from the Informant and taken to the Blount County Sheriff's Office's range for evaluation and disposal [*Id.* ¶ 25]. Device 1 was defused and analyzed by members of the Knox County Sherriff's Office ("KSCO") Bomb Squad, Federal Bureau of Investigation ("FBI"), and the ATF [*Id.* ¶ 26]. Forensic analysis performed by the ATF later identified the device as a "destructive device" as defined under 28 U.S.C. § 5845(f) [*Id.* ¶ 28;

Exh. 17 p. 2].

On August 6, 2026, the CI met with and subsequently purchased a second IED ("Device 2") and methamphetamine from Defendant for $175 [*Id.* ¶¶ 34–36]. After the meeting, the CI surrendered Device 2 and methamphetamine to law enforcement officers, who defused and analyzed Device 2 [*Id.* ¶¶ 37–38]. The contents of Device 2 were sent to ATF for further analysis and determined to be an explosive device as defined by federal regulations, 49 C.F.R. 1500.3, and 18 U.S.C. § 841(d), that falls under 18 U.S.C. Chapter 40 [*Id.* ¶ 39; Exh. 17 p. 2].

On September 14, 2026, Officers found and met Defendant at his worksite to discuss the ongoing investigation into the devices [Doc. 3 ¶ 50]. ATF officers introduced themselves, "informed [Defendant] that he was not under arrest nor detained[,]" and "affirmed that he understood that he was not detained nor under arrest, [when he] stat[ed] 'No, I know my rights . . . Like, I mean, technically, I don't even have to talk to you, but I'm intrigued" [*Id.* ¶ 51]. During the discussion, Officers informed Defendant of their investigation involving the devices and that he was suspected of being the person who had been distributing them to the CI and showed him the messages between him and the CI [*Id.* ¶ 52]. Defendant then admitted to distributing the devices and named another individual as the person who was making the devices [*Id.*]. Officers also questioned Defendant about the sale of methamphetamine, to which Defendant "advised that he used methamphetamine and also sold it to make money" and that he "obtain[ed] methamphetamine from at least two sources of supply for which he then resold to other drug users" [*Id.* ¶ 53].

At the hearing, the Government presented multiple pieces of evidence to support its arguments on probable cause. First, the Government presented reports from investigators made

after each of the controlled buys between the CI and Defendant [Exhs. 1, 3, 5, & 7]. Each of these reports detail the CI's interactions with Defendant to purchase methamphetamine and the IED devices. The Government also offered screenshots and videos from the controlled buys [Exhs. 2, 4, 6, 8A–B, 13, & 15]. The screenshots [Docs. 2, 4, 6, & 8A–B] show Defendant's face and/or identifying arm tattoos belonging to Defendant. The videos are time stamped and show the CI interacting with Defendant during controlled buys on August 8 and 14, 2026 [Exhs. 13 & 15]. During the first video, Defendant's face is visible during the transaction [Exh. 13], while in the second video, Defendant's voice can be heard speaking with the CI [Exh. 15]. In Agent Waggoner's Non-Custodial Interview Report documenting Defendant's September 14, 2026, interview, Defendant also states that he has sources of supply for the methamphetamine [Exh. 16 ¶ 7]. Defendant does not contest the probable cause finding for the charge of conspiracy to distribute five grams or more of methamphetamine, and during the hearing, Defendant's counsel "agree[d] that the government has met [the] low probable cause burden" as to this charge [Preliminary Hearing, 28:00].

**B. ANALYSIS**

Defendant is charged with conspiring to distribute methamphetamine in violation of 18 U.S.C. §§ 841(a)(1) and 846. Based on the testimony and evidence presented at the hearing, as well as the Defendant's agreement that the Government has met their burden, the Court finds probable cause to believe Defendant Johnson committed the crime of conspiring to distribute methamphetamine based upon the five controlled purchases of methamphetamine on July 6, 13, 28, and August 6 and 14, 2026, and Defendant's statement that he has multiple sources of supply for methamphetamine [Exh. 16 ¶ 7].

Defendant Johnson is also charged with possessing a destructive device in furtherance of drug trafficking in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(B)(ii) [Doc. 3 p. 1]. Defendant contests both that the devices qualify as destructive devices and that Defendant possessed them in furtherance of drug trafficking.

Starting with whether the devices sold by Defendant qualify as destructive devices under the statute, the Government argues that Device 1 meets the definition of a destructive device under the statute. In support, it cites the ATF Report of Examination of the devices [Exh. 17]. Specifically, the ATF opines that "Device 1 . . .was designed as a weapon and would be properly identified as an improvised explosive device[,] and that "[e]xplosive bombs are destructive devices as . . . defined in 26 U.S.C., § 5845(f)" [*Id.* at 2].

Defendant responds that the devices are not destructive devices as defined by the statute [Preliminary Hearing, 35:58]. Specifically, Defendant argues that "just because [it is] an explosive device[, does not mean] it meets the qualifications for the statute" [*Id.* at 36:10]. Rather, "it has to be shown . . . or changed to be a weapon" [*Id.* at 36:15]. Defendant further argues that the Government's reliance on the ATF report should carry little weight because there is little to no background as to what is or is not a weapon [*Id.* at 36:30–37:55].

First, the court finds that "destructive device" for the purposes of this statute is defined as "any explosive, incendiary, or poison gas . . . bomb" 18 U.S.C. § 921(a)(4)(i).[3] The Sixth Circuit Court of Appeals has stated that "Section 921(a)(4) does not demand that the device operate as initially intended, but that it [is] enough that it be readily convertible into a destructive device. A

---

[3] The Government and Defendant both point to 26 U.S.C. § 5845(f) for the definition of a destructive device. While the definitions are nearly identical, the Court uses the definition found in 18 U.S.C. § 921(a)(4) as this is the appropriate definition for use in this chapter.

pipe bomb constitutes a destructive device if it possesses an explosive main charge, a container, and a method of initiation." *United States v. McNeil*, 106 F. App'x 294, 302 (6th Cir. 2004) (quoting *United States v. Langan,* 263 F.3d 613, 626 (6th Cir.2001)) (citation modified). The ATF report on the IEDs sold by Defendant to the CI found that Device 1 met the qualifications of an explosive bomb as defined under 26 U.S.C. § 5845(f),[4] while Device 2 would be defined as an explosive under 18 U.S.C. Chapter 40.[5] These reports along with photographs of the devices and Agent Waggoner's description of the dismantling of the devices in the Affidavit show that the devices contained a combustible powder, which was contained either in a PVC pipe or a prescription pill bottle, and a fuse. *See McNeil*, 106 F. App'x at 302 (describing the components of a pipe bomb). Thus, the Court finds there is probable cause to believe that Device 1 qualifies as destructive devices as defined by § 924(a)(4).

Turning next to whether the Device 1 was possessed in furtherance of drug trafficking, the Government argues that this charge applies because Defendant stated to the CI that the price of the IED had increased so that "[Defendant] could purchase more methamphetamine for sale" [Doc. 3 ¶ 23; Preliminary Hearing, 26:40]. Thus, "the sale . . . [of the] destructive device, that he sold, was

---

4 The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device . . . and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled." 26 U.S.C. § 5845(f).

5 "Explosive materials" means explosives, blasting agents, and detonators . . . Except for the purposes of subsections (d), (e), (f), (g), (h), (i), and (j) of section 844 of this title, 'explosives' means any chemical compound mixture, or device, the primary or common purpose of which is to function by explosion; the term includes, but is not limited to, dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord, and igniters." 18 U.S.C. § 841(c)–(d).

to obtain funds to resupply himself with methamphetamine . . . furthering his drug trafficking" [Preliminary Hearing, 27:05].

Defendant argues that while probable cause is a low standard, it is still a standard, and the Government failed to show a nexus between the sale of the devices and drug trafficking [*Id.* at 28:35]. Specifically, Defendant asserts the Government's contention that he raised the price of the device to garner additional funds to use for resupplying himself with methamphetamine "was not enough to show the 'in furtherance'" prong required by the statute [*Id.* at 28:50]. Defendant also challenges the reliability of the CI, arguing that the claimed statement (that Defendant told the CI that he planned to use the money to resupply himself) was not recorded and is unreliable hearsay [*Id.* at 30:00]. Defendant also argues that during the only sale where both an IED and the methamphetamine were sold, they were separately priced and negotiated, and nothing indicated that "one hinged upon the other" [*Id.* at 31:25–45]. Thus, "this is simply a case where they were present at the same time but separate transactions" [*Id.* at 31:50].

Under § 924(c), "[A]ny person who, during and in relation to . . . [a] drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be "sentenced to a term of imprisonment of not less than 30 years." 18 U.S.C. § 924(c)(1)(A), (B)(ii). The definition of "[f]irearm includes any destructive device" such as "any explosive, incendiary, or poison gas . . . bomb." *United States v. Stotts*, 176 F.3d 880, 888 (6th Cir. 1999) (quoting 18 U.S.C. § 921(a)(4)(i)) (citation modified). The Government must show that the device was used "in furtherance," that is, that there is a "specific nexus between the [device] and the crime charged." *United States v. Gill*, 685 F.3d 606, 611 (6th Cir. 2012) (citation modified). "In deciding whether the 'in furtherance' element has been proved, we consider whether the [firearm] was

'strategically located so as to be quickly and easily available for use during [a drug] transaction.'" *Id.* (quoting *United States v. Ham*, 628 F.3d 801, 808 (6th Cir. 2011) (citation omitted)). Other relevant factors are "'(1) whether the gun was loaded, (2) the type of weapon, (3) the legality of its possession, (4) the type of drug activity conducted, and (5) the time and circumstances under which the firearm was found.'" *Id.* (quoting *Ham*, 628 F.3d at 808–09).

"[A]cquisition of a firearm in exchange for drugs is a sufficient specific nexus between the drugs and the guns to constitute possession in furtherance of the drug sale." *United States v. Frederick*, 406 F.3d 754, 764 (6th Cir. 2005) (citation modified). In this regard, "[a]s a matter of logic, a defendant's willingness to accept possession of a gun as consideration for some drugs he wishes to sell does 'promote or facilitate' that illegal sale. *Id.* (citing *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001)). "If the defendant did not accept possession of the gun, and instead insisted on being paid fully in cash for his drugs, some drug sales—and therefore some drug trafficking crimes—would not take place." *Id.*

Here, Defendant did not exchange Device 1 for drugs but, instead, requested cash. Defendant stated, however, that the additional cash he acquired from selling Device 1 would be used to supply himself with additional methamphetamine for future sales. Thus, the funds Defendant received from the sale of Device 1 would promote or facilitate additional illegal drug sales. Defendant challenges the reliability of the CI in reporting this statement by Defendant, but the CI's reliability is demonstrated by his participation in five monitored controlled buys. *United States v. Moore*, 999 F.3d 993, 998 (6th Cir. 2021) (holding that a single controlled buy corroborates information from an informant within a search warrant affidavit).

Thus, the Court finds there is probable cause to believe that Device 1's presence at the drug transaction was not a mere coincidence, but rather, it was sold to facilitate a future drug

transaction. *See Frederick*, 406 F.3d at 764. Consequently, the Court finds that Defendant's conduct also satisfies the "in furtherance" or "in relation to" element as required by statute. *See* § 924(c)(1)(A).

In sum, the Court finds probable cause exists to believe that Defendant Johnson committed a crime, specifically the possession of a destructive device in furtherance of a drug trafficking offense. Accordingly, the Court finds probable cause supports the violations alleged in the Complaint and a detention hearing must be held. Fed. R. Crim. P. 5.1(e), 18 U.S.C. § 3142.

## II. DETENTION HEARING

Before turning to the 18 U.S.C. § 3142(g) factors, the undersigned finds that a presumption in favor of detention applies in this case under 18 U.S.C. § 3142(e)(3)(A). If a defendant is charged with an offense under the Controlled Substances Act for which a maximum term of imprisonment of ten years or more is prescribed, then a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *Id*. Defendant is charged with conspiracy to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), and possession of a destructive device in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) and (B)(ii) [Doc. 3 p. 1]. These are qualifying offenses under § 3142(e)(3)(A)–(B). *United States v. Beard*, 528 F. Supp. 3d 764, 773 (N.D. Ohio 2021) (stating that the presumption for detention may arise if the Court finds probable cause exists in the criminal complaint and accompanying evidence). Given the information provided in the Complaint and the evidence presented by the Government during the preliminary hearing, "the Court finds that there is probable cause to believe that Defendant committed one or more offenses listed in [ §

3142(e)(3)(A)–(B)], including a controlled substances offense that has a maximum penalty of ten or more years of imprisonment and a [§ 924(c)] offense" that a destructive device was possessed in furtherance of "a drug trafficking crime." *United States v. Dillard*, No. 3:23-MJ-00011, 2023 WL 313856, at *2 (S.D. Ohio Jan. 19, 2023).

This presumption places the burden of production with Defendant, while the Government retains the burden of persuasion. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). While this "burden of production is not heavy, [the defendant] must introduce at least some evidence." *Id.* (internal citation omitted); *see also United States v. Lee*, No. 19-cr-20112-03, 2020 WL 1540207, at *2 (E.D. Mich. Mar. 30, 2020) (The presumption places a burden of production on the Defendant to show "at least some evidence" that he is not a danger or a flight risk). At the hearing and in Defendant's Motion for Pretrial Release on Conditions [Doc. 9], Defendant highlighted his long-term verified employment, strong family and community ties, lack of criminal history, and offered conditions including third party custodianship by his mother,[6] GPS monitoring, and substance abuse assessment and treatment [*Id.* at 5–7]. The Court finds Defendant has minimally rebutted the presumption in § 3142(e)(3), although the Court still considers the presumption of dangerousness in its decision. *United States v. Hinton*, 113 F. App'x 76, 78 (6th Cir. 2004) (observing that even when a defendant presents evidence rebutting the presumption, the presumption does not "vanish" and still carries "some weight"); *see, e.g., United States v. Simmon*, No. 3:22-CR-20-KAC-JEM, 2022 WL 9799683, at *9 (E.D. Tenn. Aug. 30, 2022) (finding defendant rebutted presumption of dangerousness when she offered two third-party custodians who would supervised defendant at both home and work), *report & recommendation adopted by* 2022 WL 4594602 (E.D. Tenn. Sept. 30, 2022). *But see, e.g., United States v. Gwathney-Law*, No.

---

[6] *See supra* note 2.

1:15-CR-00030, 2017 WL 2609044, at *2 (W.D. Ky. June 15, 2017) (concluding that the defendant had failed to overcome the presumption in favor of detention even though he was amenable to a third-party custodian arrangement and GPS monitoring, had a stable residence, substantial ties to the community, minimal criminal history, and strong family support).

Even though Defendant has overcome the presumption in favor of detention, the Government has still met its burden of persuasion that no condition or combination of conditions would reasonably assure the safety of the community under 18 U.S.C. § 3142(g).

Turning to the § 3142(g) factors, the Court first considers the nature and circumstances of the charged offenses. 18 U.S.C. § 3142(g)(1). Defendant is charged with a drug trafficking offense involving methamphetamine. "Drug distribution is a dangerous crime that places the community at considerable risk of harm." *United States v. Avila*, No. 3:23-CR-6, 2023 WL 3775062, at *4 (E.D. Ky. June 2, 2023) (citing *Stone*, 608 F.3d at 947 n.6 ("And our Court routinely affirms, on dangerous grounds, the pre-trial detention of the run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence.")). And "[m]ethamphetamine trafficking also presents a substantial risk to human life." *United States v. Washington*, No. 3:22-CR-72, 2022 WL 17168604, at *3 (Nov. 22, 2022) (citing *United States v. Gabriele*, No. 17-20754, 2018 WL 914931, at *2 (E.D. Mich. Feb. 16, 2018) ("[Defendant's methamphetamine-related] offenses are unquestionably serious as they involved a substantial risk to human life resulting from her untreated substance abuse.")). As discussed above, the Government proffered written, video, and audio evidence supporting the charged offenses. The Court finds this factor weighs heavily in favor of detention.

Second, the Court considers the weight of the evidence of Defendant's dangerousness and risk of nonappearance. 18 U.S.C. § 3142(g)(2). This factor "goes to the weight of the evidence of

dangerousness [and nonappearance], not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948; *see also United States v. Villegas*, No. 3:11-CR-28, 2011 WL 1135018, at *8 (E.D. Tenn. Mar. 25, 2011) ("In other words, this factor goes to how convincing the government's arguments of dangerousness and risk of flight are." (citation omitted)). Drug trafficking is inherently dangerous. *Stone*, 608 F.3d at 947 n.6 ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community." (collecting cases)). "It is beyond dispute that distributing narcotics is a serious offense that poses dire health risks to the community . . . ." *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020). Furthermore, in addition to the multiple recorded controlled buys, the Government notes that on October 8, Defendant "had methamphetamine on his person while he was driving around with his child" [Exh. 18]. The presence of children around controlled substances weighs heavily in favor of detention. *See United States v. Bowman*, No. 3:26-CR-30-TAV-JEM-3, 2026 WL 2096629, at *5 (E.D. Tenn. July 21, 2026) (collecting cases), *United States v. Hughes*, 668 F. Supp. 3d 744, 749 (S.D. Ohio 2023) ("drug trafficking activities . . . in the immediate presence of young children" favors detention"). Thus, this factor weighs in favor of detention.[7]

Third, the Court must consider a host of factors relating to the history and characteristics of Defendant. 18 U.S.C. § 3142(g)(3)(A). Defendant is thirty-three years of age and is a lifelong resident of East Tennessee [Doc. 9]. He has strong family ties to the area, with his "parents, step-parents, and two brothers" living locally [*Id.* at 5–6]. He also "co-parents his five-year-old son"

---

[7] Here, based on the combined charges, the Government argued that Defendant has a strong incentive to flee, as he faces combined minimum penalties of forty-five years in prison and has not previously served prison time. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties," such as a maximum of twenty years in prison, "provides a strong incentive to flee"). The undersigned finds sufficient evidence to support a finding that Defendant is a danger to the community and need not determine whether he is also a flight risk.

[*Id.* at 6]. Defendant is a veteran and has long-term employment [*Id.*]. He has no major past criminal history [*Id.*]. Defendant was also candid about his substance abuse history and told the probation officer that he would test positive for controlled substances [*Id.*]. Thus, given his strong ties, long term employment, and candor, this factor weighs slightly against detention.

Finally, under 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Drug trafficking is "a serious offense that, in itself, poses a danger to the community." *Stone*, 604 F.3d at 947 n.6. Defendant poses a danger to the community due to his alleged involvement in drug trafficking. *See United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *3 (E.D. Tenn. Feb. 27, 2002) (holding that "the risk of continued drug-trafficking while released on bail constitutes a significant danger to the safety of the community" (citations omitted)); *see also United States v. Morgan*, 657 F. Supp. 3d 976, 983 (E.D. Mich. 2023) ("Society as a whole is the victim when illegal drugs are being distributed in its communities." (citation omitted)). Further, Defendant's willingness to put others in danger, including his own child, causes this factor to weigh in favor of detention.

Considering the § 3142(g) factors and the presumption, the Court finds that the information provided in the PTSR and at the hearing establishes by clear and convincing evidence that Defendant poses a danger to the community. The Court has considered the conditions proposed by Defendant, including that his mother serve as a third-party custodian, but the Court has concerns about whether these conditions, or any others, would reasonably assure the safety of the community as required. Moreover, the Court has insufficient information to determine the suitability of Defendant's mother to serve as a third-party custodian. Although Defendant proffered at the hearing that she was willing to serve in this role and that she works remotely from home,

such does not assuage the concerns the Court has regarding the danger Defendant poses to the community.

All of this, coupled with the rebuttal presumption in favor of detention leaves the Court in doubt about the suitability of the proposed conditions and whether Defendant would abide by the proposed conditions, if imposed. *United States v. Cornish*, 449 F. Supp. 3d 681, 684 (E.D. Ky. 2020) ("[A]lmost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed.") (citation omitted).

Considering the § 3142(g) factors and the rebuttable presumption in favor of detention, the Court finds that the Government has shown by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community or any other person. Therefore, Defendant shall be detained pending trial.

## III. CONCLUSION

For the reasons discussed herein, the Court **ORDERS** as follows:

(1) The Court finds **PROBABLE CAUSE** supports the offenses alleged in the Complaint;

(2) the Court held a detention hearing and finds the Motion by the Defendant Jordan R. Johnson for Pretrial Release on Conditions [**Doc. 9**] is **DENIED**;

(3) Defendant Johnson is **ORDERED DETAINED** pending his trial;

(4) Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(5) Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel; and

(6) on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge